

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

WORLD WIDE TRAVEL INCORPORATED
　Vs.
TRAVELMATE US, INC.

C.A. No.　　2013 CA 004041 B

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once,** with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

　　　　　　　　　　　　　Chief Judge Lee F. Satterfield

Case Assigned to:　Judge MICHAEL L RANKIN
Date:　June 13, 2013
Initial Conference: 9:30 am, Friday, September 13, 2013
Location:　Courtroom 517
　　　　　　500 Indiana Avenue N.W.
　　　　　　WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

WORLD WIDE TRAVEL INCORPORATED,   :
  dba WORLDWIDE TRAVEL, INC.,      :
                               :
          and                  :
USHA CHAND                      :
1026 16th Street, NW, Suite 104      :
Washington, DC 20036,           :
          and                  :
LAXMI CHAND                   :
1026 16th Street, NW, Suite 104      :
Washington, DC 20036,           :

           Plaintiffs,        :    Civil Action No. _____
                               :    Judge _____
vs.                            :
                               :
TRAVELMATE US, INC.          :    Next Action: _____
Serve: Attn: Ritu Singla, Agent for  :
      Service of Process           :
      13565 Lavender Way        :
      San Diego, CA 92130       :
                               :
          and                  :
RITU SINGLA                 :
Serve: 3810 Valley Centre Drive, Suite 906 :
      San Diego, CA 92130       :
          and                  :
                               :
TANYA DOE,                 :
          and                  :
JOHN DOE,                  :
                               :
_____  Defendants :

13 - 0 0 0 4 0 4 1

## COMPLAINT

COME NOW your Plaintiffs, WORLD WIDE TRAVEL INCORPORATED, a District of

Columbia Corporation, doing business as Worldwide Travel, Inc. ("WWT") and WWT'S offi-

cers and shareholders, USHA CHAND ("Usha") and LAXMI CHAND, wife and husband, and

file their Complaint for relief against the above-named Defendants, and as grounds therefore,
state as follows:

## Parties and Jurisdiction

1. WWT is a District of Columbia corporation having its principal address and place of
   business at 1026 16th Street, N.W., Suite 104, Washington, D.C. 20036.

2. WWT's stock is owned by the Chands, who serve as WWT's President and Vice
   President.

3. The Chands are residents of Virginia who conduct their business for WWT primarily in
   the District of Columbia.

4. WWT has usage of, *inter alia*, American Express credit card account numbers
   78365561977001 and 37836556197305 (the "AMEX account"), which AMEX Account
   was opened by Usha Chand, and for which Usha is personally liable.

5. TRAVELMATE US, INC. ("TMI"), is, on information and belief, a California
   corporation.

6. On information and belief, TMI was trading as "TMI Web" or "TMI Web Services"
   during some or all of its transactions with WWT.

7. RITU SINGLA ("Ms. Singla") is, on information and belief, a foreign national resident
   of the United States, and the current registered agent of TMI.

8. TANYA DOE ("Tanya") is an individual acting for TMI in some of the business
   transactions with WWT.

9. JOHN DOE ("JDoe") is, on information and belief, an individual assisting Ms. Singla
   and/or TMI in presenting false invoices to WWT for payment by WWT.

10. Jurisdiction and venue are proper in this honorable court as the funds that are the subject matter of this action were paid from a District of Columbia account for a services of a District of Columbia business, and the alleged contract under which Defendants claim funds were payable to them originated in the District of Columbia.

### Facts Applicable to All Counts

11. Plaintiffs restate the allegations of paragraphs 1-10 above as if set forth fully herein.

12. Plaintiff WWT operates what may generally be described as a travel agency business, particularly with respect to foreign travel.

13. Usha Chand and her husband, Laxmi Chand (the "Chands") are the shareholders and president and vice president/secretary of WWT, respectively.

14. As an officer and shareholder, Ms. Chand used her personal credit to open the AMEX Account and allow WWT to use the AMEX Account in its business.  Mr. Chand is an authorized user of the Amex account.  Ms. Chand also allowed her daughter, Puja Chand, to be a user of the Amex Account.

15. On information and belief, Ritu Singla is a native of the Country of India.

16. On further information and belief, Ritu Singla wanted to reside and work in the United State of America, and contacted a then independent-contractor worker for WWT, Mr. Deepak Agarwal.

17. On information and belief, Ms. Singla had Mr. Deepak arrange an introduction to the Chands for purposes of requesting that the Chands sponsor Ms. Singla's coming to America to work at WWT.

18. Ms. Singla arrived in the United States in or about 2008. However, within weeks or months after arriving, despite the Chands' sponsorship, Ms. Singla ended her relationship with WWT and the Chands.

19. On information and belief, Ms. Singla then moved to California, and is currently residing and working there.

20. Mr. Deepak was ordered out of the United States, and went to India, where the Chands had established an affiliated corporation, Chand Tours, Ltd.

21. Due to the rapid changes in the travel business, including that most trips were now being arranged online, the Chands sought assistance in establishing a presence and placing advertising of WWT's services on Google.

22. On information and belief, a colleague of Ms. Singla contacted her and informed her of WWT's interest in the aforestated paragraph.

23. On information and belief, Ms. Singla formed defendant TMI.

24. On information and belief, Ms. Singla is TMI's chief officer and majority shareholder during a majority of TMI's relationship with WWT.

25. TMI claimed a business address of 9175 Judicial Drive, Unit 6617, San Diego, CA 92122.

26. In or about February, 2009, TMI contacted Laxmi Chand of WWT in the District of Columbia, and drafted a document styled "Contract for Guaranteed First [sic] page placement for your program under sponsored Results of Google sear Engine" (the "Document").

27. Under the Document, the "Client/Company name:" is listed as "Laxmi Chand/Worldwide Travel Inc."

28. Under the Document, there is a "Guaranteed First Page Placement for your Program,
Under Sponsored Results of Google Search Engine."

29. The Document authorizes charges from February 2, 2009 to March 1, 2009 for $3,225.00,
and continuing month-to-month "if not intimated [sic]."  No other amount of charge is
authorized.

30. On information and belief, TMI claims to have charged WWT on a monthly basis
based upon an agreed cost for various keywords which TMI guaranteed "first page
placements".

31. To charge WWT as claimed, TMI would be required to establish: (1) what were the
agreed monthly charges for the chosen keywords, and (2) were the indicated keywords
actually used in the applicable campaign.

32. TMI continued to invoice WWT for claimed services provided for "keywords" claimed to
have been used.  TMI invoiced for a vast majority of the keywords that do not appear
on invoices TMI provided.

33. Eventually, TMI switched from billing for keyword placement, to alleged "clicks" on the
advertisement with Google, without agreement from WWT and no corroboration of the
number of clicks for which charges were imposed upon the Amex Account for WWT.

34. In or about October, 2010 and November, 2010, without corroboration, TMI assessed
charges of $8,990 and $8,150 to the Amex Account as a charge to WWT.

35. Sales did not increase appreciably at WWT during this period.

36. Not understanding what justified such an alleged rapid increase in usage, WWT
immediately demanded of TMI and its alleged Manager Tanya to provide documentation
from Google corroborating the usage for which WWT was being invoiced.

37. TMI refused to comply with WWT's demand.

38. Accordingly WWT notified TMI that no further charges were to be made until such documentation was provided, which did not occur.

39. In or about January, 2011, Plaintiffs WWT and Ms. Chand notified American Express that the AMEX Account charges were in dispute.

40. TMI opposed the dispute with Amex.

41. On or about Feburary 22, 2011, TMI submitted redacted alleged Google account records to Amex supposedly verifying the charges TMI made to WWT.

42. A review of the document TMI provided for the first time on February 22, 2011 (the "TMI Letter") revealed that, while a few of the keywords may have been used, there was no documentation to show that a majority of these keywords for which WWT was invoiced were used at all.

43. In addition, TMI continued to refuse to produce documentation demonstrating the price for the keywords allegedly agreed to by Plaintiffs, and that these keywords were actually used in the WWT advertisement campaigns.

44. A review of the document TMI provided for the first time on February 22, 2011 (the "TMI Letter") revealed that, while a few of the keywords may have been used, there was no documentation to show that a majority of these keywords for which WWT was invoiced were used at all.

45. In addition, TMI continued to refuse to produce documentation demonstrating the price for the keywords allegedly agreed to by Plaintiffs, and that these keywords were actually used in the WWT advertisement campaigns.

46. TMI placed charges on the Amex Account for the keywords chosen by WWT for a May 6-May 26, 2010 advertisement campaign and the monthly cost for each keyword.

47. The cost charged to WWT for this campaign was $12,865, which TMI charged on the AMEX Account on May 6 in two separate payments of $6,665 and $6,200.

48. TMI invoiced for this campaign by email to WWT on July 24, 2011.

49. A comparison of the keywords for which WWT was charged and the pricelist later provided reveals that of the 32 keywords for which WWT was charged, only five actually appear on the pricelist produced on February 22, 2011.

50. As to one of the five keywords on the pricelist, WWT was charged more than the agreed-upon price by $100.

51. TMI has rejected all demands that it produce pricelists for the remaining 27 keywords for that one ad campaign.

52. TMI charged to the AMEX Account for WWT $7,130 on September 11, 2010 and $1,550 on September 21, 2010 for an ad campaign for September, 2010, yet a vast majority of the keywords for which WWT was charged did not appear on the pricelist produced February 22, 2011.

53. Of the 17 keywords for which WWT was charged, only six appear on the pricelist, and WWT was overcharged for the keyword "around the world airfares" by $100.

54. Despite WWT's demands, there was no corroboration that the keywords for which WWT was charged were actually used in the applicable campaigns.

55. TMI's documents showed for the May 2010 campaign, that there is no corroboration that 31 of the 32 keywords for which WWT was charged were actually used, and of the $12,865 charged to WWT, only $400 was justified.

56. TMI's documents showed for the September 2010 campaign, that there is no corroboration that 16 of the 17 keywords for which WWT was charged were actually used, and of the $8,685 charged to WWT, only $400 was justified.

57. A further review of the February 22, 2011 TMI reports revealed that (1) all of the ads that were generated by the report have not been provided, and (2) not all of the pages that constitute the report have been provided.

58. Because of TMI's refusal to produce records demanded by WWT regarding the charges it had made to AMEX's Account, WWT engaged a professional to evaluate the reports that were produced.

59. Sometime during the period of TMI's alleged services under the agreement, TMI began charging WWT on a "per click" basis as the number of "clicks" based on that keyword and Google's assessment of the quality of the use of the keyword in generating ads and pages viewed.

60. In the email from TMI to WWT on July 24, 2011 (the "July 24 Email"), TMI stated that the site maintained for WWT by TMI received "$32,913 clicks . . . & the overall Campaign CTR was 6.34%. The total cost incurred after accruing 32913 clicks was $33,443.00."

61. On April 30, 2011, WWT was informed that the computer that hosted the website had confirmed with WWT's professional that there were no more than 12,672 clicks

during this time, more than 20,000 less than that for which TMI had invoiced WWT.

62. The disparity of the misrepresentation of the foregoing paragraph of TMI's statement to WWT was intentional or reckless.

63. In reliance on TMI's misrepresentation, it overpaid by a figure to be determined at trial, but no less than $20,000, for which it incurred damages.

64. WWT's reliance on TMI's misrepresentation was reasonable under the facts and circumstances.

65. As Usha Chand was ultimately responsible for the charges made to the AMEX Account, she was damaged by the intentional overcharges made by TMI in an amount to be determined at trial, but not less than $50,000.00.

66. Funds from WWT's business used to pay the fraudulent TMI charges diminished the value of TMI to the Chands by an amount at least equal to the excess charges, and not less than $50,000.00.

67. Plaintiffs could not reasonably discover the systematic fraud and overbilling by Defendants until April 30, 2011, when the professional's report was made known.

68. TMI apparently began to again charge WWT on a keyword basis again after July 2010, and has produced no documentation justifying TMI's doing so.

69. TMI charged Worldwide on a "per click basis" from at least June 29, 2009 to July 20, 2010.

70. WWT has sought, and continues to seek, from TMI corroboration concerning the number of clicks indicated by Google for the relevant time periods.

71. TMI obviously has this information since the column entitled "click" on the documentation it did produce is redacted on the reports TMI has provided to justify its

89. In the alternative, TMI and WWT agreed that invoicing would be done on a 'keyword' basis.

90. Attached hereto as Exhibit 2 is a list of charges made by TMI to the AMEX Account and the date that such charges were posted to such account.

91. On information and belief, TMI breached the contract(s) by each of those assessments by not performing the services for which it assessed the Amex Account for WWT.

92. WWT was damaged for each such breach in an amount to be determined at trial.

93. The Chands suffered damages for each such breach as WWT's value was diminished by an amount to be determined at trial.

WHEREFORE, Plaintiffs pray that judgment be entered on its behalf, and against Defendants, jointly and severally, for damages from breach of contract(s) in an amount not less than $170,000.00, the costs of this action, and such other and further relief as this honorable Court deems just and proper in the circumstances.

## COUNTS I I to XLVIII: FRAUD

94. Plaintiffs restate the allegations of paragraphs 1-93 above as if set forth fully herein.

95. On information and belief, for each charge to the Amex Account on the date assessed, TMI intentionally overcharged WWT via email statements of the number of clicks or keyword charges for the previous period (the "Statements").

96. The Statements were intentional or reckless material misrepresentations of facts reasonably relied upon by Plaintiffs to their detriment, resulting in damages, and so constitute fraud.

97. Plaintiffs were injured by Defendants' fraud in an amount to be determined, but not less than $170,000.

98. TMI's and Singla's fraudulent actions were taken with malicious, willful and wanton intent to harm Plaintiffs.

99. Plaintiffs are entitled to punitive damages.

100. Plaintiffs have incurred and are incurring significant attorneys' fees and costs as a result of Defendants' fraud in an amount to be determined, but not less than $10,000.

WHEREFORE, Plaintiffs pray that judgment be entered on its behalf, and against Defendants, jointly and severally, for compensatory damages from fraud in an amount to be determined at trial, and punitive damages of $1,000,000, plus Plaintiffs' attorneys' fees and costs in this matter, and such other and further relief as this honorable Court deems just and proper in the circumstances.

## COUNT XLIX: FRAUD IN THE INDUCEMENT

101. Plaintiffs restate the allegations of paragraphs 1-100 above as if set forth fully herein.

102. Defendant Singla intentional disguised her identity and roll in the formation and operation of TMI to mislead Plaintiffs, and fraudulently induced them into the Document and the charges assessed by TMI.

103. The actions of the previous paragraph constitute fraud in the inducement.

WHEREFORE, Plaintiffs pray that judgment be entered on its behalf, and against Defendants, jointly and severally, to rescind the Document and any alleged agreements between WWT and TMI, and that this honorable Court issue its order returning all funds paid to TMI, punitive damages of $1,000,000, plus Plaintiffs' attorneys' fees and costs in this matter, and such other and further relief as this honorable Court deems just and proper in the circumstances.

## COUNT L: CIVIL CONSPIRACY

104.     Plaintiffs restate the allegations of paragraphs 1-103 above as if set forth fully

herein.

105.     Defendant Singla disguised herself as "Tanya, Project Manager" for TMI.  In the

alternative, Tanya is a person that civilly conspired with Ms. Singla and TMI, as well as

John Doe to defraud WWT of its funds by a systematic campaign of overbilling.

106.     The actions of the previous paragraph constitute civil conspiracy.

107.     The actions of the previous paragraph were done by the Defendants with

malicious intent and ill will to willfully and wantonly injure Plaintiffs, for which

Plaintiffs were damaged in an amount not less than $100,000.

WHEREFORE, Plaintiffs pray that judgment be entered on its behalf, and against

Defendants, jointly and severally, for compensatory damages in an amount to be

determined at trial, but not less than $100,000, punitive damages of $1,000,000, plus

Plaintiffs' attorneys' fees and costs in this matter, and such other and further relief as this

honorable Court deems just and proper in the circumstances.

Respectfully submitted,

James M. Towarnicky, DC Bar #370931
James M. Towarnicky, P.L.L.C.
3977 Chain Bridge Road, Suite 1
Fairfax, VA 22030
Phone (703) 352-0022
Facsimile (703) 352-1516





**TMI**

9175 Judicial Dr, Unit 6617, San Diego, CA-92122

**Contract for Guaranteed First page placement for your program, Under sponsored Results of Google search Engine**

TMI Contract ID: TRA0065

Sales person: Tanya Fax this contract to 858-931-0538

**SECTION A:** Client/Company Info
Client/Company name: Laxmi Chand/Worldwide Travel Inc

Address: 1025 16th Street NW Suite#104        City: Washington

State: DC                                     Zip/Postal Code: 20036

Telephone: 202-659-6430                       Fax: 1-888-800-1202
Email: gotrain@wwt-usa.com                    Website: www.wwt-usa.com

**SECTION B:** Payment Info:
Authorize our company to charge your Credit Card.

NAME: LAXMI CHAND

CC No: 378365561978033    Exp: 02/11

CV No: 9201  Amount: $3225.00  Confirmation Sign:

**SECTION D:** Contract Period
Contract is for one month from 2nd Feb 2009 to 1st Mar 2009 for $3225.00 (Three Thousand Two Hundred Twenty Five Dollars) per month. within one day your site will start coming Under Sponsored Results of Google after receiving the payment and signed contract. If not intimated, one week before the last date of contract, it will be continued for next month and amount will be charged from given credit card.

**SECTION E:** Service Description
Guaranteed First Page Placement for your Program, Under Sponsored Results of Google Search Engine:

1. AROUND THE WORLD TICKETS
2. CHEAP FARES TO INDIA
3. CHEAP FARES TO PAKISTAN
4. CHEAP FARES TO AFRICA
5. CHEAP FARES TO BANGLADESH
6. CHEAP FARES TO NEPAL
7. CHEAP FARES TO FAR EAST
8. CHEAP FARES TO MIDDLE EAST
9. CHEAP FARES TO CHINA
10. CHEAP FARES TO MANILA
11. CHEAP FARES TO ETHIOPIA

I have read, understood and agree to all of the above.

Client Signature

EX 2

| Individual charges by TMI | |
|---|---|
| 2/2/2009 | 3225 |
| 2/18/2009 | 600 |
| 2/18/2009 | 700 |
| 2/25/2009 | 4550 |
| 3/16/2009 | 675 |
| 3/31/2009 | 1180 |
| 4/7/2009 | 1210 |
| 4/15/2009 | 1055 |
| 4/24/2009 | 1845 |
| 5/22/2009 | 1620 |
| 6/1/2009 | 1830 |
| 6/9/2009 | 1850 |
| 6/18/2009 | 4485 |
| 6/30/2009 | 1548 |
| 7/8/2009 | 2765 |
| 7/15/2009 | 1950 |
| 7/23/2009 | 1910 |
| 8/3/2009 | 2810 |
| 0814/2009 | 3140 |
| 9/9/2009 | 3850 |
| 9/22/2009 | 3750 |
| 10/21/2009 | 3690 |
| 11/10.2009 | 4811 |
| 12/8/2009 | 5250 |
| 1/5/2010 | 7650 |
| 2/8/2010 | 9280 |
| 3/8/2010 | 5295 |
| 4/1/2010 | 6670 |
| 4/1/2010 | 6330 |
| 4/2/2010 | 2800 |
| 4/10/2010 | 1200 |
| 5/6/2010 | 6200 |
| 5/6/2010 | 6665 |
| 5/27/2010 | 750 |
| 6/12/2010 | 6000 |
| 6/12/2010 | 5315 |
| 7/12/2010 | 6000 |
| 7/12/2010 | 7640 |
| 8/12/2010 | 6130 |
| 9/11/2010 | 7130 |
| 9/21/2010 | 1550 |
| 10/12/2010 | 8990 |
| 11/12/2010 | 8150 |